IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PETER J. FERRARA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-0667-CV-W-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

ORDER

Pending before the Court is Plaintiff Peter J. Ferrara's ("Ferrara") Motion for Summary Judgment [Doc. # 7]. Ferrara seeks judicial review of the Commissioner's denial of his requests for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole, the Court denies Ferrara's motion.

**I.     Factual Background**

**A.     Medical History**

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

Ferrara filed his application for SSI benefits on September 30, 2004. (Tr. 49-52). He stated he was born in 1953 and became disabled beginning May 1, 1998. (Tr. 49). At the hearing, Ferrara amended his alleged onset date to September 30, 2004. (Tr. 18, 251). He alleged disability due to fatigue, weakness, shortness of breath, hernia, and a separated shoulder. (Tr. 52).

Ferrara's medical records indicate he visited George R. Reisz, M.D. ("Reisz"), at the Truman Medical Center ("Truman") for general healthcare and management of his hypertension and diabetes mellitus beginning in January 2004. (Tr. 126-48). In April, 2004, Ferrara complained of abdominal swelling. (Tr. 146-48). As of October, 2004, Ferrara's diabetes was under good control and his hypertension was under excellent control. (Tr. 126).

On October 6, 2004, Ferrara reported to Laura M. Alba. M.D. ("Alba"), at the GI Clinic for evaluation of his liver cirrhosis. (Tr. 127-29). He had no current complaints, except mild fatigue. (Tr. 127). Alba noted Ferrara's abdominal ascites had responded significantly to medication since the beginning of the year. (Tr. 127). Alba's examination showed Ferrara appeared in no acute distress. (Tr. 128). He had a small umbilical hernia which he indicated was not giving him any symptoms. (Tr. 128). Alba noted Ferrara's previous laboratory tests for chronic liver disease were essentially negative, except for hepatitis C antibody. Alba's impression was cirrhosis of the liver, secondary to alcohol liver disease and chronic hepatitis C. (Tr. 128)

On December 23, 2004, Ferrara presented to Jeri Kenagy, D.O. ("Kenagy"), for a physical examination at the request of the State Disability Determination Services ("DDS"). (Tr. 80-85). Ferrara reported he took medication for his diabetes and he had laser surgery and glasses for diabetic retinopathy in both eyes. (Tr. 80). Ferrara reported some pain and numbness, but no tingling in his hands and feet. (Tr. 80). He stated he had a history of liver cirrhosis and indicated he was being treated with appropriate medication. (Tr. 80). He also reported he had esophageal varices, gastroesophageal reflux symptoms, bilateral shoulder pain, and a hernia. (Tr. 80-81). He indicated he injured his shoulder 15 years ago and dislocated his left shoulder several weeks ago, but had not seen a doctor about it. (Tr. 81). He noted his hernia only bothered him when lifting heavy objects and he did not plan on repairing it surgically. (Tr. 81). He reported he last worked 10 years ago in the landscaping business. (Tr. 81). He stated he could stand for two hours in an eight-hour workday and that sitting was no problem. (Tr. 82). He indicated he could lift up to 40 pounds and walk a mile. (Tr. 82). He reported his wife cooked and he did the dishes. (Tr. 82). He reported no recent hospitalizations, no emergency room visits, and no major surgeries. (Tr. 82).

Upon examination, Ferrara had a normal gait and walked without an assistive device. (Tr. 82). He had no trouble getting on and off the examination tables or up and out of a chair. (Tr. 82). His hearing and speech were normal. (Tr. 82). He had a small paraumbilical hernia that was reducible and nontender. (Tr. 82). He had a normal range of motion in his cervical spine, elbows, and forearms. (Tr. 83). He had a somewhat

limited range of motion in his shoulders with some crepitus in the left shoulder. (Tr. 83). He had normal lumbar flexion, hip flexion and rotation, and knee and ankle flexion. (Tr. 83). Ferrara's straight leg raises were negative. (Tr. 83). He could squat and walk on his heels and toes without difficulty. (Tr. 83). His cranial nerves were intact with normal motor strength and sensation in his hands. (Tr. 83). He had decreased sensation in his feet. (Tr. 83).

Kenagy's impression was diabetes with moderate to severe diabetic retinopathy and some peripheral neuropathy; liver cirrhosis, well compensated with no evidence of ascites or stigmata of chronic liver disease; abdominal pain; a history of right shoulder pain; and a history of kidney damage. (Tr. 83-84). Kenagy opined Ferrara had no significant limitations in his ability to stand, walk, or handle objects. (Tr. 84). Kenagy noted Ferrara may be limited in lifting very heavy objects due to his hernia and reaching overhead due to shoulder pain. (Tr. 84).

Ferrara also periodically reported to the GI Clinic in 2005. (Tr. 90-93, 103-04, 115-20). In June, 2005, he underwent an EGD which revealed three grade three non-bleeding esophageal varices, moderate portal hypertensive gastropathy, and multiple columns of non-bleeding gastric varices. (Tr. 119-20). An EGD the following month indicated four grade four non-bleeding esophageal varices and marked portal hypertensive gastropathy. (Tr. 92). Ferrara then underwent an EGD with band ligation in September, 2005. (Tr. 90-91). He had three grade two non-bleeding esophageal varices and nonerosive gastritis. (Tr. 90-91). In October 2005, Ferrara reported he felt much

better. (Tr. 115). He rated his pain a zero out of ten. (Tr. 115). In December 2005, Ferrara underwent another EGD with band ligation which revealed four columns of grade three non-bleeding esophageal varices, moderate portal hypertensive gastropathy, and erosive gastritis. (Tr. 103-04).

In April, 2006, Ferrara followed-up with Reisz at Truman. (Tr. 220-22). He reported no nausea or vomiting since his hospital admission two months earlier. (Tr. 221). He also indicated his blood sugars were high. (Tr. 221). Reisz noted Ferrara had significant improvement from his past problems with ascites. (Tr. 221). Upon examination, Ferrara's blood pressure and glucose levels were elevated. (Tr. 222). Reisz's impression was hypertension, diabetes mellitus, esophageal varices, cirrhosis, and hepatitis C. (Tr. 222). Reisz altered Ferrara's blood pressure medications and advised him to increase his daily exercise. (Tr. 222).

Later that month, Ferrara reported to the emergency room with complaints of vomiting. (Tr. 211-19). Upon arrival in the emergency room, Ferrara's blood pressure was high, but dropped with medication. (Tr. 216). Ferrara indicated he had been noncompliant with his blood pressure medication for the past few days. (Tr. 211). Ferrara remained in the hospital for observation due to increased creatine levels. (Tr. 218). The examining physician's impression was vomiting, likely secondary to gastritis; hepatitis C; cirrhosis; and a history of esophageal varices. (Tr. 211). Ferrara was advised to continue to follow-up with the GI clinic and with Reisz. (Tr. 211-12).

5

Ferrara returned to the GI Clinic for medication refills in May, 2006. (Tr. 205-06). Ferrara visited Reisz at Truman on May 16, 2005. (Tr. 202-04). He reported some abdominal pain after drinking milk. (Tr. 203). Upon examination, Ferrara's blood pressure had improved. (Tr. 204). Reisz's assessment was hypertension; diabetes mellitus, controlled; history of esophageal varices; cirrhosis; and hepatitis C. (Tr. 204). Ferrara presented to the emergency room with complaints of epigastric pain in June, 2006. (Tr. 198-99). Ferrara left the emergency room before being examined by a physician. (Tr. 195-197, 263).

### B.    Administrative Hearing

Ferrara testified at an administrative hearing on August 31, 2006. (Tr. 250-65). He stated he was 53 years old (Tr. 250) and had completed high school (Tr. 252). He indicated his work history was sporadic. (Tr. 253). He testified his biggest medical problems were his legs, dizziness, being off balance, nausea, and stomach pain. (Tr. 253). He indicated his legs were sore, but he had not had any treatment for his legs. (Tr. 254). He testified he took medication for nausea and diabetes. (Tr. 255-56). He stated his dizziness and nausea were related to his cirrhosis and hepatitis C. (Tr. 254). He noted a nurse said he would need a new liver in three years. (Tr. 256). He also reported he had shoulder pain and a bad memory. (Tr. 254, 58-59). He stated he had no mental health treatment. (Tr. 256). He indicated he visited the GI clinic once every three months and he visited another clinic for his diabetic medications once every three months. (Tr. 255). He testified that during a typical day he would listen to the news, say the rosary, watch

sports on television, and listen to music. (Tr. 256-57). He stated he would also wash a couple of dishes and occasionally empty the trash. (Tr. 257). He noted he did not drive because his license was suspended and he could not see well enough to drive. (Tr. 257-58). He indicated he could stand for a couple of hours and could sit all day long. (Tr. 258). He stated he could walk a couple of blocks and lift about 40 pounds. (Tr. 258). He testified that about five weeks before, he was helping his friend build a porch and he had to quit after two hours. (Tr. 258).

    A medical expert, Dr. Katzman, testified Ferrara had a history of diabetes with evidence of sensory neuropathy in his hands and feet. (Tr. 264). He indicated Ferrara's diabetes did not meet Listing § 9.08 because his end organ involvement was well-controlled and his diabetes was stable. (Tr. 267). Katzman stated Ferrara had a mild to moderate renal impairment and proliferative retinopathy for which he had laser surgery. (Tr. 264). Katzman indicated Ferrara's vision impairment did not meet a Listing. (Tr. 264). He indicated Ferrara had cirrhosis of the liver. (Tr. 266). Katzman indicated Ferrara's cirrhosis resulted in portal hypertension which then caused esophageal varices and varicose veins in the gastropathy. (Tr. 266). He stated Ferrara's cirrhosis of the liver did not meet Listing § 5.05 because he did not have a massive hemorrhage. (Tr. 268). Katzman stated Ferrara also had a history of ascites which had never persisted for five months. (Tr. 268). He noted Ferrara's liver disease had been treated and he had done much better than expected. (Tr. 269). Katzman also stated Ferrara's combination of impairments did not meet a Listing. (Tr. 269). Katzman testified that nothing in the

7

record indicated Ferrara could not do light or sedentary work. (Tr. 269). He stated Ferrara's sensory neuropathy would not prevent him from standing or walking. (Tr. 270).

A vocational expert, Denise Waddell ("Waddell"), testified in response to a hypothetical question that an individual of Ferrara's age, education, and work experience, along with Ferrara's RFC could perform Ferrara's past relevant work as a production worker. (Tr. 273-75). Waddell indicated the same hypothetical individual, with the additional limitations of standing and walking three hours in an eight-hour day and a sit/stand option, could perform other light work as a small products assembler, a light case packer, or a machine tender. (Tr. 274). Waddell noted such jobs existed in significant numbers in the local and national economies. (Tr. 274). The vocational expert testified such jobs would accommodate up to 12 absences a year. (Tr. 274).

## II. Discussion

To establish that he is entitled to benefits, Ferrara must show that he was unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A).

Ferrara alleges a single error committed by the ALJ: that he must receive treatment 16 days out of the year - monthly for GI medications and quarterly for diabetes medications - and, therefore, he would exceed the 12 absences that Waddell indicated as a maximum for Ferrara to be employed. The ALJ did note that Ferrara appeared to be treated once a month at the GI clinic and once every three months at the diabetic clinic.

8

Case 4:07-cv-00667-NKL   Document 11   Filed 05/16/08   Page 8 of 10

(Tr. 21). However, there is no evidence that such treatment requires a full day's absence or that Ferrara would be required to miss a working day in order to receive treatment. The fact that a claimant requires regular healthcare appointments does not necessarily indicate he cannot work on those days. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (declining to assume that the claimant had to miss an entire day of work for her doctor's appointments). In this case, nothing in the record indicated Ferrara could not arrange his medical appointments around a work schedule or that he would need to miss a full day of work for his appointments. When Ferrara visited the GI Clinic on March 14, 2005, the nurse documented Ferrara's medical information at 8:12 a.m. and the doctor updated the record at 9:07 a.m., suggesting Ferrara's visit lasted less than an hour. (Tr. 230-31). There is no other evidence that Ferrara's medical appointments would require him to miss a full day of work.

Additionally, the evidence contained in the record does not support Ferrara's contention that he would miss at least 16 days a year for medical treatment. Ferrara only had 12 healthcare appointments in 2005 and 10 in 2006, prior to the administrative hearing. (Tr. 86-120, 175-82, 198-244). Ferrara presented no evidence at the hearing regarding the number of days a year he would likely miss due to his medical treatment. In fact, Ferrara testified he only visited the GI clinic once every three months and he visited another clinic for his diabetes medication once every three months, suggesting he only had approximately eight medical appointments a year. (Tr. 255).

9

Finally, the ALJ left the record open for 30 days after the hearing in order for Ferrara to submit additional evidence or other information to show how many days a year he would likely miss work. (Tr. 275). Ferrara failed to provide the evidence as requested. Thus, there is no reversible error here where the ALJ clearly considered the possibility that Ferrara's absenteeism may prevent him from working, but Ferrara supplied no such evidence and the ALJ's RFC assessment was based on the substantial evidence in the record.

## III.   Conclusion

Accordingly, it is hereby

ORDERED that Ferrara's Motion for Summary Judgment [Doc. # 7] is DENIED.


                                             s/ Nanette K. Laughrey
                                             NANETTE K. LAUGHREY
                                             United States District Judge

Dated:  May 16, 2008
Kansas City, Missouri